```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION
```

PETER JAMES DUNKERLEY,          :

    Plaintiff,               :

vs.                             :    CIVIL ACTION 07-0320-CG-M

JAMES HALLMARK, et al.,         :

    Defendants.              :


REPORT AND RECOMMENDATION


Plaintiff, a Mobile County Metro Jail inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is recommended that this action be dismissed, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

I.   Complaint as Amended (Docs. 1, 9, 11, 13, 15 & 19).

Plaintiff names as Defendants James Hallmark, a detective with the Mobile Police Department, and Steve Giardini, an Assistant District Attorney for Mobile County, Alabama.  Plaintiff's claims against these Defendants arise from the criminal proceeding that was instituted against him on December 3, 2006, charging him with the offense of possession of obscene matter.  Since filing this action, Plaintiff has been convicted of this offense and has received a seven-year sentence of

imprisonment. (Doc. 13). The relief that Plaintiff seeks in this action is for the Court "to perform an investigation into the State's conduct, get the State to dismiss and discharge the case and grant relief from the individuals and as a whole." (Doc. 1 at 7).

In the complaint, Plaintiff alleges that Defendant Hallmark did not conduct a proper investigation because Defendant Hallmark admitted at the preliminary hearing that he did not go to the web sites. Plaintiff complains "the only evidence is the printouts. That shows he is basing the charge on what is depicted" because no investigation was done. (Doc. 1 at 5). Plaintiff contends that Defendant Hallmark is "basing his opinion on the prejudicial effect of the images." (Doc. 1 at 4).

Defendant Giardini is alleged to have withheld evidence from defense counsel and to be basing the charge on opinion and protected materials. (Doc. 1 at 5). At the hearing on defense counsel's motion to dismiss on March 20, 2007, Plaintiff asserts that the evidence was not complete, the prosecution did not acknowledge the "state criminal code," and the prosecution was outside the prosecutor's jurisdiction for commercial material. (Doc. 1 at 5).

After filing the complaint, Plaintiff filed several Motions to Add Information. (Docs. 9, 11, 15 & 19). In the Motion at Document 9, he states that Defendants have made more statements

which he could add, and that he has the domains' names so pressure could be put on the web sites' owners to prove that the images are protected, thereby freeing him from the allegations. (Doc. 9). Then, in the Motion at Document 11, Plaintiff maintains that:

> 2. . . . . [T]he state did not do an investigation of the websites at the time of the warrant being executed because they wouldn't find the same pictures and they wouldn't want to possess images of child pornography.
>
> 3. . . . . [T]he state is using their criminal code (Code of Alabama 1975) to regulate a production of material found on the commercial market and regulated by federal laws.
>
> 4. . . . . [T]he state of Alabama has no jurisdiction over these materials and is using the subjects[sic] sensibilities to prosecute this case.
>
> 5. . . . . [T]hese websites are public access and been on the internet for years some date back to 2003.
>
> 6. . . . . [T]he state has based their prosecution on what is depicted and what is their presumptions on the laws regulating this cases[sic] materials, and is violating the first amendment for dictating what people see on the internet.
>
> 7. . . . . [T]hese websites know what is prohibited and some are still online today a year after the images were printed.
>
> 8. The Plaintiff would futher[sic] ask for futher[sic] assistance to file cases against these website owners and asks the court to supply the plaintiff with the proper authorities to file these charges.

(Doc. 11).  In addition, Plaintiff contends that Alabama is dictating what people see, read, speak, or hear, thereby violating the First Amendment's guarantee of freedom of speech. (Doc. 15 at 2).  For example, Plaintiff attached a listing of web sites that the State of Alabama contends display prohibited images.  (*Id.*).  Then, Plaintiff relates that at trial an assistant district attorney asked his witness, who was in contact the United States Attorney's Office, whether these sites would be prosecuted by that Office.  (Doc. 19 at 1).  Plaintiff contends that these web sites are not within this Court's jurisdiction and, therefore, it does not make sense "that the state was asking the federal court's[sic] to prosecute these various web sites" and "why would the federal court assist the state and not the plaintiff, [sic] would show favoritism."  (*Id.* at 1-2).[1]

---

[1] In document 19 Plaintiff makes the statement that "The United States Attorney's Office is with the Court."  (Doc. at 19 at 1).  This is an incorrect statement.  This Court is a part the Judiciary Branch, and the United States Attorney's Office is a part of the Executive Branch.  They are separate and distinct entities which are located in different branches of the federal government, but together these two branches make up two-thirds of the federal government.  However, Plaintiff was convicted by the state government.

Furthermore, "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another."  *Otero v. United States Attorney General,* 832 F.2d 141, 141 (11th Cir. 1987) (affirming the dismissal of an action seeking the writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 1149 (1973)).  "A decision to prosecute is within the United States Attorney's substantial discretion . . . ."  *United States v. Ballard,* 779 F.2d 287, 295 (5th Cir.), *cert. denied,* 475 U.S. 1109 (1986).

II.  <u>Standards of Review Under 28 U.S.C. § 1915(e)(2)(B)</u>.

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing the complaint as amended (Docs. 1, 9, 11, 15 & 19) under 28 U.S.C. § 1915(e)(2)(B).[2]  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist.  *Id.*  Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Id.*  Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997)(noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6))).  To

---

[2]The predecessor to this section is 28 U.S.C. § 1915(d). Even though Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered. *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4 (6th Cir. 2000).  However, dismissal under § 1915(e)(2)(B) is now mandatory.  *Bilal*, 251 F.3d at 1348-49.

avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.* at 1965.  That is, the allegations must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id.* at 1966 (second brackets in original).  "[L]abels and conclusions and a formulaic recitation of a cause of action's elements" are insufficient for grounds for entitlement to relief.  *Id.* at 1959.  However, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones v. Bock*, 127 S.Ct. 910, 920-21 (2007).

III. Discussion.

    A.  Plaintiff's Requests for Relief.

In this action the relief sought by Plaintiff controls this action's disposition.  Plaintiff requests the Court "to perform an investigation into the state's conduct, get the state to dismiss and discharge the case and grant relief from the individuals and as a whole."  (Doc. 1 at 7).  Plaintiff's request for this Court to investigate the State's conduct appears to be connected to a review of his conviction and sentence.  The Court is unable to discern another meaning from Plaintiff's request,

particularly because it is the State that he wants investigated. Therefore, this request is entwined with the request following it.

Plaintiff's following request is to have the State "dismiss and discharge the case." This request was made before Plaintiff was convicted. But, in the present situation, providing his request to be relieved of criminal proceedings a liberal construction, Plaintiff would want his conviction overturned, which would then lead to his release. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596 (1972) (holding that *pro se* pleading are entitled to a liberal construction). However, "'habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release.'" *Abella v. Rubino,* 63 F.3d 1063, 1066 (11th Cir. 1995) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827). "Thus, declaratory or injunctive relief claims which are in the nature of habeas corpus claims - i.e., claims which challenge the validity of the claimant's conviction or sentence and seek release - are simply not cognizable under § 1983." *Id.* (footnote omitted).

Plaintiff's claims against Defendant Hallmark and Defendant Giardini are challenges to the criminal proceeding that was brought against him. Thus, the request to have his conviction overturned and to be released is for injunctive relief that is in

7

the nature of habeas corpus.  However, this claim for injunctive relief is not recognized in this § 1983 action and is, therefore, due to be dismissed as frivolous.

The other portion of Plaintiff's request for relief is for the Court to "grant relief from the individuals and as a whole." This request is unclear to the Court.  Due to its vagueness, this request fails to state a claim upon which relief can be granted. *See Twombly*, 127 S.Ct. at 1966.  For the reasons stated above and considering the nature of Plaintiff's requests in their entirety, this action is due to be dismissed with prejudice as frivolous.

   B.   An Alternate Basis - Claims for Damages.

In the alternative, the Court observes that Plaintiff has not requested monetary relief.  In regard to the last request for relief, if Plaintiff intended to request money damages, such claims in this action would also be without merit.

Some of Plaintiff's claims for damages in this action would be governed by the decision in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994).  In *Heck*, a prisoner filed a § 1983 damages action against the prosecutors and the investigator in his criminal case for their actions which resulted in his conviction.  The *Heck* Court analogized the plaintiff's claim to a common-law cause of action for malicious prosecution, which has as a required element that the accused prove the termination of the prior criminal proceeding in favor of the accused.  512 U.S.

at 484, 114 S.Ct. at 2371.  The Supreme Court's reasoning for this requirement is to avoid 'parallel litigation over the issues of probable cause and guilt,'" *id.* (citation omitted), to reinforce "'a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction,'" *id.* (citation omitted), and to prevent a convicted criminal defendant from collaterally attacking his criminal conviction through a civil suit, *id.*  The Court concluded:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, (footnote omitted), a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed (footnote omitted), in the absence of some other bar to the suit (footnote omitted).

*Id.* at 486-87, 114 S.Ct. at 2372-73.

Plaintiff's damages claims that would invalidate his conviction if the Court were to rule favorably on them cannot be recognized in this action if they have not "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 487, 114 S.Ct. at 2372. Until the prescribed invalidation of his conviction has occurred, the *Heck* Court "den[ies] the existence of a cause of action." *Id.* at 489-90, 114 S.Ct. at 2373-74. Plaintiff nonetheless has not shown that his conviction has been invalidated. As a consequence, those damages claims that would invalidate his conviction if the Court were to rule favorably on them are due to be dismissed.

Plaintiff's claim against Defendant Hallmark is that the only evidence from his investigation were printouts, which are allegedly prejudicial and protected. (Doc. 1 at 4; Doc. 5). The printouts were the evidence that was used at Plaintiff's trial because Plaintiff states "the State failed to investigate the source of the evidence." (Doc. 13 at 1; *see* Doc. 1 at 5). Plaintiff contends throughout that the State should have examined the web sites. And Plaintiff's claim against Defendant Giardini is that the prosecution was not within the State's jurisdiction.

(Doc. 1 at 5; Doc. 13 at 1).  These claims of insufficient evidence and lack of jurisdiction are precluded at this time by *Heck* because a favorable ruling on these claims for Plaintiff would cause his conviction to be invalidated.

There remain other claims against Defendant Giardini.  That is, Plaintiff complains that Defendant Giardini's evidence in opposition to defense counsel's motion to dismiss was not complete, he did not acknowledge the "state criminal code," he withheld evidence from defense counsel, and the charge was based on opinion and protected materials.[3]  (Doc. 1 at 5).  As a prosecutor, Defendant Giardini is entitled to absolute prosecutorial immunity from damages in this § 1983 action for acts or omissions associated with the judicial process, in particular, those acts taken in initiating and pursuing a prosecution and in presenting the government's case.  *Imbler v. Pachtman,* 424 U.S. 409, 430-31, 96 S.Ct. 984 (1976); *Wahl v. McIver,* 773 F.2d 1169, 1173 (11th Cir. 1985); *Fullman v. Graddick,* 739 F.2d 553, 558-59 (11th Cir. 1984).  "Generally, prosecutorial actions that occur in court are shielded by absolute immunity, *see Burns,* 500 U.S. at 491-92, 111 S.Ct. at 1942; *Imbler,* 424 U.S. at 430-31, 96 S.Ct. at 995, even where the prosecutor knowingly proffers perjured testimony or fabricated

---

[3]Some of these claims may well be precluded by *Heck* but, due to their vagueness, they are being addressed in the context of prosecutorial immunity that is available to Defendant Giardini.

11

exhibits, *Rowe,* 279 F.3d at 1279-80." *Rivera v. Leal,* 359 F.3d 1350, 1354 (11th Cir. 2004). "[A]bsolute immunity extends to a prosecutor's 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir. 1999) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)). Absolute prosecutorial immunity "typically is stretched far into the case and even into its afterlife." *Neville v. Classic Gardens*, 141 F. Supp.2d 1377, 1383 (S.D. Ga. 2001) (citing *Allen v. Thompson,* 815 F.2d 1433, 1434 (11th Cir. 1987) (finding a prosecutor was entitled to absolute immunity for writing an allegedly malicious letter to the Parole Commission)).

Defendant Giardini's acts of opposing defense counsel's motion to dismiss, of failing to "acknowledge state criminal code," of failing to turnover evidence, and of bringing charges against Plaintiff were taken while Defendant Giardini was acting as an advocate for the State in the prosecution of Plaintiff. Accordingly, Defendant Giardini is entitled to absolute prosecutorial immunity from Plaintiff's damages claims against him for these claims. *See Long v. Satz,* 181 F.3d 1275, 1279 (11th Cir. 1999) (finding that the prosecutor was entitled to absolute immunity for his determination of what exculpatory information should be turned over even though he received the

information after trial); *Amaker v. Coombe,* 1998 WL 637177, at *6 (S.D.N.Y. Sept. 16, 1998) (finding the prosecutor was entitled to absolute prosecutorial immunity when he opposed the defendant's motion to dismiss) (unpublished).  These claims against Defendant Giardini are, therefore, due to be dismissed with prejudice as frivolous.

IV.  Conclusion.

Based upon the foregoing reasons, it recommended that this action be dismissed with prejudice as frivolous, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

> MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
> AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
> AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a
> matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing
> a "Statement of Objection to Magistrate Judge's
> Recommendation" within ten days after being served with
> a copy of the recommendation, unless a different time
> is established by order.  The statement of objection
> shall specify those portions of the recommendation to
> which objection is made and the basis for the
> objection.  The objecting party shall submit to the
> district judge, at the time of filing the objection, a

>   brief setting forth the party's arguments that the
>   magistrate judge's recommendation should be reviewed *de
>   novo* and a different disposition made.  It is
>   insufficient to submit only a copy of the original
>   brief submitted to the magistrate judge, although a
>   copy of the original brief may be submitted or referred
>   to and incorporated into the brief in support of the
>   objection.  Failure to submit a brief in support of the
>   objection may be deemed an abandonment of the
>   objection.

    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

    DONE this 10th day of April, 2008.

                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE